FILED

2010 Oct-12  AM 11:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **WILLIAM T. HEARD, JR., et al** | ) | |
| | ) | |
| **Appellants/Defendants,** | ) | |
| | ) | |
| **v.** | ) | **CV 10-PT-1194-NE** |
| | ) | |
| **WILLIAM F. PERKINS, etc.** | ) | |
| | ) | |
| **Appellee/Plaintiff.** | ) | |

## MEMORANDUM OPINION

This cause comes before the court on the defendants' appeal from an order of the

Bankruptcy Court of the Northern District of Alabama, Northern Division as established by the

Motion for Leave to Appeal filed on May 7, 2010; Stipulation and Joint Motion for an Order

Granting Motion for Leave to Appeal and Setting Appellate Briefing Schedule filed on May 20,

2010; and this court's order dated May 21, 2010.

The court has considered the Amended Complaint filed by the trustee (or plaintiff); the

Motion to Dismiss filed by the defendants; the Order of the bankruptcy court dated April 19,

2010; a partial transcript of a hearing before the bankruptcy court attached to a Submission Sheet

filed in this court on May 7, 2010; the Recommendation of the bankruptcy court dated May 4,

2010 and filed in this court on May 7, 2010; a hearing before this court on August 23, 2010;[1] the

briefs and special submissions of the parties; and other data before the court.[2]

---

[1] For excerpts from the hearing before this court on August, 23, 2010, see Exhibit A attached hereto.

[2] The Motion to Dismiss will be considered under general 12(b)(6) law in the light of the now well known, if not well understood, *Twombly* and *Iqbal* cases. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The parties agree that Georgia law provides the applicable substantive law.[3]  The parties have not agreed as to what that law is.  The parties also agree that the Supreme Court of Georgia would find Delaware law to be persuasive if there is no previously established law on the matters at issue here.[4]

### Claims & Issues
### Before This Court

There are some claims pending before the bankruptcy court which are not before this court.[5]  The appellants have stated that the issues are the following:

1. Do the claims in the Amended Complaint that are based on Defendants' business strategy assert an impermissible "deepening insolvency" cause of action?

2. In light of recent Supreme Court authority in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), is the Amended Complaint required to set forth well-pled allegations sufficient to rebut the presumptions of the Business Judgment Rule in order to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6).

William F. Perkins, Chapter 11 Trustee for Bill Heard Enterprises, Inc. ("BHE"), is listed as the plaintiff in the Amended Complaint.  The named defendants in the Amended Complaint are:

- William T. Heard, Jr. — President, Chief Executive Officer, and Director of BHE.

- Richard M. Young — Corporate Controller, Vice President, and Director of BHE.

---

[3] At the hearing before this court on August 23, 2010, counsel for the trustee stated, "I think the parties all agree that Georgia law is the applicable law."

[4] The Trustee perhaps agrees to such persuasiveness only as to "the internal affairs doctrine" or "corporate governance."

[5] As to those claims the bankruptcy court denied a motion to dismiss, there has been no related appeal.

- Leigh M. Feldner, as administrator of the estate of Ronald Feldner — Chief Financial Officer, Corporate Secretary, and Director of BHE.

- Edward Heard — An officer and director of Landmark Chevrolet, Ltd. and Bill Heard Chevrolet, Ltd.

- William T. Heard, III — President of the Bill Heard Chevrolet Company.[6]

While nine counts are asserted in plaintiff's Amended Complaint, only three are at issue in this appeal.  The following counts are at issue:

- <u>Count I</u>: Breach of Fiduciary Duties, which is asserted against all defendants.  (Am. Compl. ¶¶ 102-10).

- <u>Count II</u>: Aiding and Abetting Breach of Fiduciary Duty, which is asserted against defendants Young and Feldner.  (Am. Compl. ¶¶ 111-15).

- <u>Count VIII</u>: Waste of Corporate Assets/Ultra Vires Acts, which is asserted against all defendants. (Am. Compl. ¶¶147-49).

Plaintiff's subject allegations now before this court all revolve around "defendants' business strategy."  Plaintiff claims that Heard, Jr. continued to pursue a faulty business strategy after it proved to be a failure.  Further, plaintiff claims that Young and Feldner did not stand up against  Heard, Jr.'s insistence to follow the failed business strategy.

Regardless of the legal issues relating to defendant Heard, Jr., this court will grant the Motion to Dismiss on the issues before this court as to the remaining defendants who joined in said motion.  The court will do so based on the trustee's acknowledgments at this court's August

---

[6] James Matthews was initially named as a defendant in this action, but was later dismissed as he "was neither a director nor an officer of any of the Debtors."  Edward Heard and William T. Heard, III are both William T. Heard, Jr.'s sons.

3

23, 2010 hearing, and the briefs, etc. of said trustee.[7]

At the August 23, 2010 hearing before this court, the trustee's attorney stated:

Mr. Heard was the controlling member. *He was the 99.9 percent shareholder.* He was the CEO. He was the chairman of the board, and *his word was law*. And if he said we're doing something, everybody else said okay, even if they thought it was irrational and stupid; they said we're going to do it because that's what the boss wants. And so the controller, he, in his testimony says, we were spending all this money and we shouldn't have been.

(Emphasis added).[8]

Counsel for the trustee summarized the issues before the court as:

Let me boil it down to you, I mean ultimately, really, the only issue that you need to decide is that the officers and directors breached their fiduciary duty or not by squandering corporate assets pursuing a business strategy that they knew had failed and had no chance of success.

In sum, the trustee explained that the fiduciary duty claims were "[e]ssentially" the only claims

before the court, other than "potentially . . . one aspect of the waste claim."

And in regards to the trustee's allegations of Heard, Jr.'s insistence on following the

failed business strategy, counsel stated:

For example, two of the directors, they realize that the cost of this operational marketing subprime strategy was killing the company. *So they wanted to cut costs*. . . . Mr. Heard . . . *who dominated the company went behind their back* . . . .
. . . .
There was no vote. . . .
. . . .
. . . Mr. Heard goes behind their back and says to district managers, rise those costs right back to where they were, and he doesn't discuss his plan with

_____

[7] Although there are some claims against "defendants" which are arguably asserted against all defendants, there was no mention of business strategy claims against the two sons at the August 23, 2010 hearing. They may have had leadership roles in two corporations.

[8] It is not clear that Feldner and Young said "okay." They did not have a choice. For comparable quotes, see other excerpts in Exhibit A.

Mr. Young and Mr. Feldner.  (Emphasis added).

This belies an aiding and abetting theory.  Also, the trustee claims that he is  "not necessarily challenging the fact that [defendants] decided to go to subprime borrowers.  Everybody went to subprime borrowers.  That's what happened. . . .  [W]hat we are talking about is after the subprime had collapsed, how did [defendants] respond to that crisis?"

Regardless of the law which will otherwise be determined to be applicable to this case, the trustee would have to establish some causal relationship between the alleged actions and/or inactions of the defendants other than William T. Heard, Jr. and the alleged "squandering of corporate assets."[9]  The trustee emphasizes that the other directors objected to the approach taken by Heard, Jr., and further emphasizes that the other directors did not have control over how the corporation responded to the subprime "crisis."[10]

## Further Discussion of Claims Against Defendants

It is clear that Heard, Jr. exercised total control whether "behind the back" or otherwise. It is not clear that he can be held liable under Georgia law based on the claims now before this court.  As earlier suggested, the real issues are: (1) whether the squandering of assets claim is, in reality, a deepening insolvency claim not recognized under Georgia law; (2) whether Georgia law

---

[9] Fiduciary relationships involve some equitable principles.  Some of these principles may serve to protect fiduciaries.

[10] Although the court does not rely upon the following observation, the court notes that one-person corporate control is not against the public policy of Georgia.  The relevant Georgia statute provides that a corporate board of directors may "consist of *one* or more individuals."  Ga. Code Ann. §14-2-803 (2003) (emphasis added). While the articles of incorporation and bylaws of the subject corporation(s) apparently provided for three directors, the admitted *de facto* situation was to the contrary.  It is specious to suggest that Young and/or Feldner could have dictated a different path.  This court thus applies its "judicial experience and common sense."  *See Iqbal*, 129 S. Ct. at 1950.

allows creditors to bring breach of fiduciary duty claims based upon a failed business strategy; and (3) whether Heard, Jr. is entitled to prevail on a business judgment defense.[11]

### Georgia Law

The trustee argues that Georgia law permits creditors to maintain breach of fiduciary duty claims against corporate directors.[12]  The trustee relies upon the following cases to support this argument: *Ware v. Rankin*, 104 S.E.2d 555, 558 (Ga. Ct. App. 1958);  *Sanders v. Naguszewski (In re Naguszewski)*, No. 07-04050, 2009 WL 6499348, at *3 (Bankr. N.D. Ga. Apr. 29, 2009); *Smith Drug Co. v. Pharr-Luke (In re Pharr-Luke)*, 259 B.R. 426, 431-32 (Bankr. S.D. Ga. 2000); *Bank Leumi-Le-Israel, B.M. v. Sunbelt Indus., Inc.*, 485 F. Supp. 556, 558-59 (S.D. Ga.1980). The trustee also makes passing references to *McEwen v. Kelly*, 79 S.E. 777, 779 (Ga. 1913).

The trustee's claim of how the defendants allegedly pursued a failed business strategy and thereby breached their fiduciary duties is summarized by the following conclusory allegation in the amended complaint:

> Had [Defendants] properly educated themselves about the financial perils that the Debtors were facing or taken any measures to understand the options available to them to preserve the Debtors' value and assets, the Defendants would have discovered that their only reasonable and viable alternative would have been to hire professional outside assistance or, at the very least, discuss the possibility of reorganizing, liquidating, or shutting down operations.  If Defendants had properly executed their fiduciary duties before January 1, 2008, they could have avoided the subsequent ninety-one million dollar loss sustained in 2008 — a loss that is nearly identical to the total estimated value of the Debtors' unsecured claims . . . .[13]

---

[11] Of course, if  Heard, Jr. prevails on any of these premises, all defendants prevail regardless of this court's earlier holdings regarding the defendants other than Heard, Jr.

[12] All of these claims fall under an umbrella of alleged bad business strategy.

[13] It is highly doubtful that advertising costs etc. could have resulted in such extensive losses.

(Am. Compl. ¶ 51).  Similar allegations are made in paragraphs 56, 63, 67-70, 73-74, 80, 83 and

103.  The business strategy the trustee criticizes is Heard Jr.'s decision to continue the previously

successful business strategy of high volume sales to low income purchasers.  (Am. Compl. ¶ 48).

There are no hypothetical alternatives alleged other than, in a conclusory manner, that hired

experts could have solved the problem.  There are no present claims before this court concerning

preferences, embezzlements, fraudulent conveyances or other such specific defalcations.

      The trustee's citation of purported Georgia law includes two state court cases.  The

remaining cases are non-controlling federal cases.  Plaintiff's central authority for his assertion is

*Ware v. Rankin*, 104 S.E.2d 555, 558 (Ga. Ct. App. 1958).  In *Ware* the Georgia Court of

Appeals confronted a situation where the board of an insolvent corporation chose to pay off—to

the detriment of other creditors—two promissory notes for which a director and an officer were

personally liable as endorsers.  *Id.* at 557-58.  In this context, the court first recited the principle

that "'Directors primarily represent the corporation and its stockholders, but when the

corporation becomes insolvent they are bound to manage the remaining assets for the benefit of

its creditors, and cannot in any manner use their powers for *the purpose of obtaining a preference*

*or advantage to themselves*.'"  *Id.* at 558 (emphasis added) (citation omitted).  The court then

stated that officers and directors of a corporation "occupy the same fiduciary position, and when

the corporation becomes insolvent are likewise charged with *the duty of conserving and*

*managing the remaining assets in trust for the creditors*."  *Id.* (emphasis added).  Next, the court

summarized Georgia law by stating "officers and directors may not . . . use their position for the

purpose of *preferring themselves* over any creditor, and any scheme or device the purpose of

which is to *indemnify themselves* against loss, whether as creditors or as endorsers of notes given

7

by the corporation or otherwise, constitutes legal fraud." *Id.* at 559 (emphasis added). The court concluded by affirming the trial court's decision that the "petition sufficiently allege[d] that the effect of the payments of the notes . . . on which [an officer and director] were endorsers . . . was to give these defendants a preference or advantage." *Id.* Therefore, *Ware* stands for the limited principle that officers and directors of an insolvent corporation must "manage the remaining assets for the benefit of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves." *Id.* at 558 (citation omitted).

In addition to *Ware*, plaintiff cites a couple of decisions from federal bankruptcy courts whose opinions and citations of authority overlap. Further, both cases involved § 523(a)(4) of the Bankruptcy Code, which concerns the non-dischargeability of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." First, plaintiff cites *In re Naguszewski* where the court pronounced: "Under Georgia common law, the officers and directors of an insolvent corporation 'stand as trustees of corporate properties for the benefit of creditors first and stockholders second.'" 2009 WL 6499348, at *3 (Bankr. N.D. Ga. Apr. 29, 2009) (quoting *Bank Leumi-Le-Israel, B.M. v. Sunbelt Indus., Inc.*, 485 F. Supp. 556, 559 (S.D. Ga.1980)).[14] But the court followed this statement with no citation to—much less any analysis of—Georgia statutory or common law; rather, it only quoted another federal court. Therefore, *Naguszewski* is of little value despite the court's use of adverbs such as "clearly" to describe Georgia law on this topic.

---

[14] As explained by the court in *Naguszewski*, "The phrase 'debt for,' as it is used repeatedly in § 523(a), means 'debt as a result of' or 'debt by reason of,' such that § 523(a)(4) requires that the debt at issue result from the debtor's defalcation." 2009 WL 6499348, at *4 (quoting *Cohen v. De La Cruz*, 523 U.S. 213, 219 (1998)) (citing *Greenberg v. Schools*, 711 F.2d 152, 156 (11th Cir. 1983) (holding that a debt that was "the result of debtor's fraud" could be exempted from discharge under § 523(a)(4) when the parties had later entered into a settlement agreement)).

The second case plaintiff cites involving § 523(a)(4) is *In re Pharr-Luke*, 259 B.R. 426, 431-32 (Bankr. S.D. Ga. 2000), which likewise concerned the dischargeability of certain debts. In contrast to *Naguszewski* , however, *Pharr-Luke* actually delved into Georgia law on the topic. *See id.* at 430-32.  After citing *Ware*, the court quoted a recent Georgia decision, which in turn quoted *Ware*, that stated "[w]hen a corporation becomes insolvent, its directors are 'bound to manage the remaining assets for the benefits of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves.'" *Id.* at 430 (quoting *Hickman v. Hyzer*, 401 S.E.2d 738, 740 (Ga. 1991)).  Yet before concluding that the debtor committed defalcation by using corporate "funds either for personal gain or for the benefit of a [solvent] sister corporation," the court found that Georgia common law "imposed . . . an express fiduciary duty" on corporate officers.  *Id.* at 431-32.  This duty, the court held, was "that after insolvency managing officers are 'charged with the duty of conserving and managing the remaining assets *in trust* for creditors.' What they may not do is 'use their position for the purpose of *preferring themselves* over any creditor.'" *Id.* (quoting *Ware*, 104 S.E.2d at 559).  Even though the court found Georgia law allowed officers of an insolvent corporation to "prefer one creditor over another even if there is an incidental benefit to the officer," *id.* (citing *Ware*, 104 S.E.2d at 559), the court concluded by "find[ing] that *from the moment of filing* [for bankruptcy, the] debtor had a fiduciary duty to manage the assets of the insolvent corporation . . . for the benefit of its creditors and avoid misuse of those assets."  *Id.* at 432 (emphasis added).

*Pharr-Luke*'s analysis of the Georgia cases it cited is limited to the context of a director's misappropriation and misuse of corporate assets.  *See id.* at 430-32.  It should be noted that while the court used the broad term "misuse," it was a reference to the defendant's use of funds for

either personal gain or the benefit of another corporation the debtor also owned. *Id.* at 432.
Further, both *Pharr-Luke* and *Naguszewski* concerned *when* a director's fiduciary duties to
creditors were triggered, but neither discussed *what* the contours of this "fiduciary" relationship
entailed. *See id.* at 431.

And finally, plaintiff cites *Bank Leumi-Le-Israel, B.M. v. Sunbelt Indus., Inc.*, where a
federal district court stated, in dicta, "By operation of law, a fiduciary relationship does exist.  In
the case of an insolvent corporation, the directors and officers stand as trustees of corporate
properties for the benefit of creditors first and stockholders second." 485 F. Supp. 556, 558-59
(S.D. Ga.1980) (citing *Super Valu Stores v. First Nat'l Bank*, 463 F. Supp. 1183 (M.D. Ga.
1979)).  Despite the fact that the preceding quote appeared in a portion of the court's opinion that
did not affect the outcome of the case, the court merely cited a federal bankruptcy court and did
not cite any Georgia statute or common law to support this pronouncement. *Id.*  Further, the
facts of *Bank Leumi* are clearly inapposite to this case because it concerned a bank's request to
enjoin the sale of a corporation and its assets, which it declined to do after finding the bank was
nothing more than an unsecured creditor. *Id.* at 557, 559.

Georgia law in effect provides that officers and directors of an insolvent corporation must
"manage the remaining assets for the benefit of its creditors, and cannot in any manner use their
powers for the purpose of obtaining a preference or advantage to themselves." *Ware*, 104 S.E.2d
at 558 (citation omitted).  While Georgia courts at times use the term "fiduciary" to describe the
relation of directors and officers to creditors once the company becomes insolvent, the "duty of
conserving and managing the remaining assets in trust for the creditors" appears limited to a
prohibition on directors and officers from "us[ing] their position for the purpose of *preferring*

10

*themselves* over any creditor" because "any scheme or device the purpose of which is to indemnify themselves against loss . . . constitutes legal fraud." *Id.* at 558-59 (emphasis added); *see also Hickman*, 401 S.E.2d at 740. Simply put, Georgia law prohibits corporate insiders of insolvent corporations from using corporate funds to prefer their own, personal interests over those of the creditors. Creditors have options other than total reliance on directors. They can cease credit if they observe a crash. They can attempt to obtain involuntary bankruptcy. There is no substantial indication here that Heard, Jr.'s actions or inactions were out of a selfish or bad faith interest to obtain a preference or advantage over creditors. To the extent that plaintiff asserts such claims, they are not now before this court.

### The Eleventh Circuit's Recent Decision in *In re Far & Wide Corporation*

Since Georgia law does not cover the situation here, this court, as recommended by the bankruptcy court, concludes that the Eleventh Circuit's recent opinion in *In re Far & Wide Corp.* controls. *See* No. 08-14346, 2010 WL 1731775 (11th Cir. Apr. 30, 2010). Even though *Far & Wide* concerned Florida and Delaware law, it represents controlling authority not only because the Georgia cases are largely silent on this issue but also because *Far & Wide* dealt with claims of mismanagement brought on behalf creditors and involved similar allegations and circumstances to the present action.

Far & Wide Enterprises, the principal debtor, was created by Wellspring Capital Management LLC—the parent company of Far & Wide—and certain individuals who served on the board of Far & Wide for the sole purpose of acquiring and consolidating various travel companies to later sell the resulting conglomerate for a profit. *Id.* at *1. Similar to this case,

however, "[t]ime and circumstance intervened in Far & Wide's plan" in that the travel industry came upon hard times "after the September 11, 2001 terrorist attacks and the subsequent outbreak of the SARS virus in Asia." *Id.* at *2. And because of these unforeseen contingencies, Far & Wide was unable to repay its loans and accordingly filed for bankruptcy. *Id.* at *1-2.

Thereafter, a trustee was appointed to pursue claims on behalf of two trusts, one created for the debtors and the other consisting of creditors who voted to accept the liquidation plan. *Id.* at *1. Two of the trustee's general allegations are particularly relevant for present purposes. First, the trustee "allege[d] that Wellspring and the Individual Defendants violated their fiduciary duty of loyalty to Far & Wide by pursuing a plan that maximized their own self-interest but was harmful in the long-term to Far & Wide's creditors." *Id.* Second, the trustee "allege[d] that Wellspring and Far & Wide chose not to file for bankruptcy or wind down the Debtors at that time because it would have caused them to lose their $45 million investment." *Id.* at *2. After the district court dismissed nine of the thirteen counts asserted by the trustee, the case was reviewed by the Eleventh Circuit. For present purposes, the trustee's fiduciary duty claims can be categorized as the debtors' direct claims, the creditors' direct claims, the creditors' derivative claims, and "the related aiding and abetting claims." *Id.* at *4.

As to the creditors' direct fiduciary claims, the trustee made similar contentions to those presently made by the trustee in this court in that the trustee alleged that "Delaware courts have long recognized that, when a corporation becomes insolvent, its property must be administered as a *trust* fund for the benefit of creditors" and further "that, upon insolvency, the officers and directors owe a fiduciary duty directly to creditors, which requires them to *maximize* the company's value for the creditors, as the corporation's residual value holders." *Id.* at *7

(emphasis added) (citations omitted).  The court rejected these arguments and dismissed the creditors' direct claims because "[t]he Delaware Supreme Court [has] held that creditors of an insolvent company do not have a direct claim against directors or managers for breach of fiduciary duty." *Id.* (citing *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007)).[15]

The Eleventh Circuit then turned to the creditors' derivative fiduciary duty claims.  It began by noting that "[t]hese claims attempt to assert derivatively the identical direct claims of the Debtors for breaches of fiduciary duty and depend on the same factual allegations."  *Id.* at *8. Accordingly, the court dismissed these claims because a "plaintiff may only recover from a defendant once for a single claim" and "[i]f the Debtors succeed on the direct claims against the Individual Defendants," *i.e.*, the debtor's direct claims, "then the creditors' derivative claims must fail because the Individual Defendants cannot be liable twice for the same claim." *Id.* (citations omitted).  And likewise, if the "[d]ebtors' direct claims fail to state a claim then the creditors' derivative claims must also fail because the claims are based on the same factual allegations." *Id.*

Finally, the court addressed the debtors' direct fiduciary duty claims, which the court

_____

[15] In *Gheewhalla*, the Delaware Supreme Court held:

> To recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors.  Directors of insolvent corporations must retain the freedom to engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation. Accordingly, we hold that individual *creditors* of an *insolvent* corporation have *no right to assert direct* claims for breach of fiduciary duty against corporate directors.  Creditors may nonetheless protect their interest by bringing derivative claims on behalf of the insolvent corporation or any *other* direct nonfiduciary claim . . . that may be available for individual creditors.

930 A.2d at 103 (emphasis in original).

13

divided between the duty of loyalty and the duty of care.  As to the debtors' duty of loyalty claim, the court summarized the trustee's claim as alleging that the company's directors "managed Far & Wide for the benefit of a majority shareholder [Wellspring] and that Far & Wide obtained a loan from Wellspring in October 2002, which allowed the company to continue to run its troubled businesses rather than preserving its value for the creditors." *Id.* at *9.  The court dismissed this claim as it constituted an impermissible cause of action—deepening insolvency—under Delaware law[16] because "[t]he only injury alleged . . . was to the Debtors' creditors as a result of Far & Wide staying in business longer and deepening its insolvency, when it would have been in the best interest of the creditors for Far & Wide to cease business and liquidate."[17]  *Id.* at *10.

## Conclusion

Based on the foregoing discussion the court will reverse the bankruptcy court's denial of the defendants' motion to dismiss as to the portions of Counts I, II and VIII which are premised on the alleged breaches of fiduciary duty or otherwise related to the alleged failure of the defendants' business strategy.  In addition to the foregoing discussion of cases, the court further notes the following authorities: *United States v. Alder*, 186 F.3d 574, 578-79 (4th Cir. 1999)

---

[16] The Eleventh Circuit explained: "Recent Delaware cases hold that officers and directors do not breach the duty of loyalty by exercising their business judgment and continuing to operate an insolvent corporation rather than entering bankruptcy and preserving assets to pay creditors." 2010 WL 1731775, at *10 (citing *Gheewalla*, 930 A.2d at 99; *Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 174 (Del. Ch. 2006)).

[17] As a alternate ground for dismissal of the debtors' duty of loyalty claim, the court held that the trustee's "conclusory allegations . . . [were] not supported by the necessary factual allegations 'to state a claim to relief that is plausible on its face.'" *Id.* at *10 (quoting *Twombly*, 550 U.S. at 570).  Further, the court dismissed the debtors' duty of care claim because the trustee's complaint failed to state a claim as it "alleges only that the Individual Defendants 'refused or failed to follow [the] advice' of the two independent consultants hired by Far & Wide's management. . . . [A] plaintiff must allege more than that the directors and officers of a corporation received information from outside consultants, but decided not follow this advice."  *Id.* at *11 (first alteration in original) (citation omitted).

14

(discussing Georgia law); *Peller v. S. Co.,* 911 F.2d 1532, 1536 (11th Cir. 1990); *Grace Bros., Ltd. v. Farley Indus., Inc.*, 450 S.E.2d 814, 816 (Ga. 1994); *Randall & Neder Lumber Co., Inc. v. Randall*, 414 S.E.2d 718, 720 (Ga. Ct. App. 1992); Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law. 549 (2005).

This court's holdings are premised on, the lack of established law regarding deepening insolvency and breach of fiduciary duty claims related to business strategy.  This court does not reach the merits of the defendants' business judgment defense because it has decided the case on other premises.  The court offers the following with regard to whether the defense can be now considered.

The parties' business judgment arguments have centered on whether that defense can be considered in deciding a motion to dismiss.  The trustee argues that the business judgment rule is an affirmative defense and that, as such, "plaintiffs are not required to negate an affirmative defense in their complaint."  *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (alterations omitted). This court assumes, but does not decide, that said rule must be considered as an affirmative defense.  In any event, "A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim."  *Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 n.2 (11th Cir. 2008) (per curiam) (citation omitted); *Quiller v. Barclays Am. Credit, Inc.*, 927 F.2d 1067, 1069 (11th Cir. 1984).  And further, *Twombly* and *Iqbal* appear to expand the right to have business judgment considered pursuant to a motion to dismiss.

Within ten (10) days, the defendants will submit a proposed (order) (judgment).  The plaintiff will have seven (7) days to object as to form and consistency with this Memorandum

15

Opinion.  The court will certify the (order) (judgment) pursuant to 28 U.S.C. § 1292(b).

This the 12th day of October, 2010.

_____

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

**Exhibit A**

Excerpts from August 23, 2010 Hearing[18]

1.  Trustee: "Georgia will view Delaware law as persuasive authority if there's no Georgia law on the subject."  The trustee appears to limit this statement to matters of corporate governance or internal affairs.

2. Trustee: "Now, Georgia has lots of authority on the business judgment rule.  It's just not merely as deeply developed as it is in Delaware.  So Georgia does, of course, from time to time look into Delaware [corporate law]."  The trustee questions whether Georgia would "necessarily" look to Delaware on deepening insolvency.

3.  Defendants: "Your honor, I would think that Georgia courts would look at Delaware law under deepening insolvency issues and the business judgment rule issues."

4.  Trustee: "The specific claims before the Court on this matter are the breach of fiduciary duty claims, duty of care, aiding and abetting . . . .  It's the breach of fiduciary duty, but only parts of the breach of fiduciary duty; the duty of care and the duty of loyalty claims *as they relate only to the business strategy*. . . .  Because bad faith and good faith is essentially the same thing as the duty of loyalty.  There is not necessarily a separate claim."  The trustee acknowledged that the duty of care claim requires gross negligence.  (Emphasis added).

5.  Trustee: "That may not have been something that was within their realm of responsibility, but they aided others in breaching that fiduciary duty."  This statement is made with reference to aiding and abetting.  It is difficult to see how someone could aid and abet when

---

[18] Most of the quotes are from the trustee's attorney because most of the discussion was by him.  Some quotes are followed by this court's comments.

he or she has no responsibility, control, or means of stopping an action, and he or she has no intent to aid or abet.

     6.  Trustee: "The bottom line on the breach of fiduciary duty that's at issue here before the Court is that the defendants knowingly squandered corporate assets pursuing a business strategy . . . ."  This seems to be about the same as a deepening insolvency claim.

     7.  Trustee: "Being a bad business person is not a breach of your fiduciary duty."  This is a telling admission.

     8.  Trustee: "No, I don't know that you have to show alternatives.  You just have to show that they gave no due consideration to anything."  This seems to raise conclusory and causation questions.

     9.  Trustee: "You don't necessarily have to have a motive [for making bad business decisions]."

     10.  Trustee: "[T]wo of the three directors, who also happened to be the CEO or the CFO of a company were absent because of the physical incapacity . . . ."  The CFO, Mr. Feldner, has since died.  This seems to belie aiding and abetting.

     11.  Defendants: "First of all, the 11th Circuit protects even irrational business decisions.  It's called the business judgment rule."

     12.  Defendants: "And to your other point regarding the self-dealing or the personal profit or motive, there is none here."  This seems true except, perhaps, for claims not now before this court.

     13.  Trustee: "Let me boil it down to you.  I mean ultimately, really, the only issue that you need to decide is that the officers and directors breached their fiduciary duty or not by

squandering corporate assets pursuing a [previously successful] business strategy that they knew had failed and had no chance of success."

14. Defendants: "I would frame the issues differently.  Of course, the first issue is a deepening insolvency point, which would moot all this analysis of duty of care and duty of loyalty. . . .  And the second point is the business judgment rule applied to protect their business decisions here."

15. Defendants: "And *Far & Wide* goes to the deepening insolvency issue, and it also goes to the business judgment rule issue."[19]

16. Trustee: "There is no deepening insolvency claim that's been asserted in this lawsuit."

17. Defendants: "It's our position that there are deepening insolvency claims alleged here. If you look at the substance . . . .  If you look beyond the window dressing . . . ."

18. The defendants invoke a *Twombly* and *Iqbal* analysis as to plausibility.  The trustee responds that the court "has to take the well-pled allegations of the amended complaint and assume that they are accurate and that they are factual."

19. The defendants note that after the bankruptcy court considered the Eleventh Circuit's recent decision in *Far & Wide*, it issued a recommendation that effectively reversed its original decision regarding the issues now before this court.

20. Trustee: "Mr. Heard [Heard, Jr.] was the controlling member.  *He was 99.9 percent shareholder*.  He was the CEO.  He was the chairman of the board, *and his word was law*.  And if he said we're doing something, everybody else said okay, even if they thought it was irrational

---

[19] *See Mukamal v. Bakes (In re Far & Wide Corp.)*, No. 08-14346, 2010 WL 1731775 (11th Cir. Apr. 30, 2010).

and stupid; they said we're going to do it because that's what the boss wants." (Emphasis added). What they actually said was that he gave them no choice.

21. Trustee: "And then the credit collapse happened in 2007, in the Summer of 2007. . . . I mean it virtually happened overnight." As everyone knows, it was practically universal. This court could almost take judicial notice that these were not the only car dealers to fail.

22. Trustee: "We are not necessarily challenging the fact that they decided to go to subprime borrowers. . . . What we are talking about is after the market collapses . . . . [The market] disappeared literally, overnight . . . ."

23. The trustee distinguished the *Citigroup* case[20] on the basis that the bank got into subprime investments after it should have known better. "And the difference here is we're talking about when the subprime market crashed, our case is how did you respond to the crash . . . ." This may be a distinction without a difference.

24. Trustee: "It was almost instantaneous from they're making money, and then suddenly they're making nothing . . . ."

25. "Trustee: "For example, two of the directors, they realize that the cost of this operational marketing subprime strategy was killing the company. *So they wanted to cut costs*. . . . Mr. Heard . . . who dominated the company went behind their back . . . . There was no vote. . . . Mr. Heard goes behind their back and says to district managers, rises those costs right back to where they were, and he doesn't discuss his plan with Mr. Young and Mr. Feldner." (Emphasis added). This belies an aiding and abetting theory.

---

[20] *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106 (Del. Ch. 2009).